## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ORIOL MADRENAS, DOUGLAS JEFFERSON, ROBERT BURGY, JOHN SOOTS, and ORVILLE WRIGHT, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 1:23-cv-03651 |
| | ) | |
| v. | ) | Honorable John F. Kness |
| | ) | |
| CRUNCHBASE. Inc., a Delaware corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

### SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Oriol Madrenas ("Madrenas"), Douglas Jefferson ("Jefferson"), Robert Burgy ("Burgy"), John Soots ("Soots"), and Orville Wright ("Wright") (collectively "Plaintiffs") bring this action on behalf of themselves, and all other persons similarly situated, and allege the following against Defendant Crunchbase, Inc. ("Crunchbase" or "Defendant"):

### NATURE OF ACTION

1.      Plaintiffs and members of the proposed classes seek statutory damages, an injunction, and other relief from Crunchbase for violations of their right of publicity as protected by statutes in the following states: Illinois, California, Nevada, Indiana, and Alabama.

2.      As discussed in detail below, each of the aforementioned states prohibits the use of an individual's name and other personal identifying information for commercial purposes without first obtaining consent, written or otherwise. *See,* Illinois Right of Publicity Act ("IRPA"), 765 ILCS § 1075/1 *et seq.*; California Civil Code - CIV § 3344, *et seq.*; Nevada Right of Publicity Statute ("NRPS"), NV ST § 597.770 *et seq.*; Indiana Publicity Code, IC 32-36-1 *et seq.*; and Alabama Right of Publicity Act ("ARPA") Ala. Code § 6-5-770 *et seq.*

3. Crunchbase provides an internet-based business search platform for prospecting new business opportunities. Users of Crunchbase's online platform can obtain personal information of various individuals, including their identifying information ("profiles"), based on particular search queries. The initial view of an individual's profile contains a name and job title. To view a full profile and to obtain contact information relating to that individual, a visitor to Crunchbase's website must either enter into a monthly subscription, paid yearly, or a free seven-day trial, which converts to a monthly subscription unless cancelled.

4. Plaintiffs and the proposed Classes have no relationship with Crunchbase. More importantly, Plaintiffs and Members of each Class never provided Crunchbase with consent to use their identity and other personal information to advertise subscriptions to its platform.

5. Despite failing to obtain prior written consent from Plaintiffs and the proposed Classes, Crunchbase nevertheless utilized their personal identifying information for the purpose of enticing users of its platform to enter into paid subscriptions for full access to profiles contained in its platform and access to other attributes of the platform unavailable without a paid subscription. In other words, Crunchbase used Plaintiffs' and other Class Members' identity for commercial purposes without their prior permission or consent in violation of their right of publicity as protected by their states' right of publicity statutes.

6. Plaintiffs bring this Complaint seeking an order (i) declaring that Crunchbase's conduct violates their right of publicity as defined by the various statutes, (ii) requiring that Crunchbase cease the unlawful activities described herein, (iii) awarding Plaintiffs and the proposed Classes statutory damages in an amount proscribed by statute per violation or an amount equal to actual damages/profits, whichever is greater, and (iv) an award for punitive damages, if warranted, and attorneys' fees and costs.

## PARTIES

7.      Oriol Madrenas is a citizen of the State of Illinois residing in Cook County.

8.      Douglas Jefferson is a citizen of the State of California, residing in Compton, California.

9.      Robert Burgy is a citizen of the State of Nevada, residing in Las Vegas, Nevada.

10.      John Soots is a citizen of the State of Indiana, residing in Bloomington, Indiana.

11.      Orville Wright is a citizen of the State of Alabama, residing in Alabaster, Alabama.

12.      Crunchbase is a privately held corporation registered in Delaware with its headquarters located in San Francisco, California. For its online platform, Crunchbase seeks out and compiles identifying information of Illinois, California, Nevada, Indiana, and Alabama citizens and uses that information to market its online platform to Illinois, California, Nevada, Indiana, and Alabama citizens and others without written consent.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2) (the "Class Action Fairness Act") because diversity of citizenship exists between the parties – Plaintiffs are citizens of several states, including Illinois, and Crunchbase is a Delaware corporation with headquarters in California. Further, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, with at least 100 or more potential Class Members based on the number of individuals identified in Crunchbase's platform and the damages available through the various statutes, including IRPA.

14.      This Court has personal jurisdiction over Crunchbase because it sought out and compiled the names and other identifying information of Madrenas and other Illinois citizens and

used that information for marketing Illinois citizens and others without their written consent. In so doing, Crunchbase violated Madrenas' right of publicity, as well as the right of publicity of other Illinois putative Class Members, in this District.

## ILLINOIS RIGHT OF PUBLICITY ACT

15.    IRPA was enacted in 1999 to recognize individuals' "right to control and to choose whether and how to use [their] individual identity for commercial purposes." 765 ILCS § 1075/10.

16.    IRPA defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS § 1075/5. "Commercial purpose" is defined in part, as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.*

17.    IRPA prohibits the use of an individual's identity for commercial purposes without first obtaining prior written consent. 765 ILCS § 1075/30. IRPA provides that a violation of the Act may result in statutory damages in the amount of $1,000 per violation or actual damages and profits derived from the unauthorized use, whichever is greater. 765 ILCS § 1075/40. IRPA further provides that punitive damages may be rewarded for willful violations and authorizes the issuance of injunctive relief where appropriate. 765 ILCS § 1075/40 & 50.

## CALIFORNIA CIVIL CODE § 3344

18.    Pursuant to California Civil Code section 3344, the use of another's name, vice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or

for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent is prohibited. CA Civil § 3344.

19.     Section 3344 provides for damages for a violation in an amount equal to the greater of $750 or the actual damages suffered as a result of the unauthorized use. Putative damages may also be awarded, as well as attorney's fees and costs.

### NEVADA RIGHT OF PUBLICITY STATUTE

20.     NRPS recognizes that "[t]here is a right of publicity in the name, voice, signature, photograph or likeness of every person." NV ST § 597.790.

21.     NRPS prohibits the commercial use of an individual's name, voice, signature, photograph, or likeness within Nevada without first obtaining written consent. *Id.*

22.     A violation of NRPS may result in statutory damages in the amount of $750 per violation or actual damages and profits derived from the unauthorized use, whichever is greater. NV ST § 597.810. NRPS further provides that punitive damages may be rewarded for willful violations and authorizes the issuance of injunctive relief were appropriate. *Id.*

### INDIANA CODE § 32-36-1 *et seq.*

23.     Under Indiana's Publicity Code, an individual's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism (*i.e.* "identity") is afforded protection from unauthorized commercial use provided the individual's identity has commercial value.[1] IC 32-36-1-6, 32-36-1-8. In other words, Indiana's Publicity Code protects an individual's right of publicity.

24.     Section 32-36-1-8 of the Publicity Code prohibits the use of an individual's personality for a commercial purpose within Indiana without first obtaining prior written permission.

---

[1] The Code defines and refers to such "identity" as "personality". *See* IC 32-36-1-6.

25.     Any person who establishes that his or her right to publicity has been violated shall be eligible to receive: (i) statutory damages of $1,000 or (ii) actual damages, including profits derived from the unauthorized us, whichever is greater. IC 32-36-1-10. The Publicity Code also allows for treble or punitive damages if the violation is knowing, willful, or intentional and injunctive relief. *Id.*; IC 32-36-1-12.

## ALABAMA RIGHT OF PUBLICITY ACT – Ala. Code § 6-5-770 *et seq.*

26.     The Alabama Right of Publicity Act ("ARPA") protects "those attributes of a person that serve to identify that person to an ordinary viewer or listener, including, but not limited to name, signature, [or] …. likeness." AL ST § 6-5-772.

27.     ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

28.     Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief.  Al St § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

## FACTUAL ALLEGATIONS

29.     Crunchbase touts itself as the leading provider of private company prospecting and research solutions.[2]

30.     Crunchbase offers an online platform, which is accessible at its website, www.Crunchbase.com. According to Crunchbase, the platform offers "intelligent prospecting

---

[2] Information for Crunchbase is found at its website, www.crunchbase.com, last visited on July 3, 2023.

software powered by live company data for salespeople, CEOs and VCs to find and close deals" and attracts more than 76 million unique visitors annually.

31.     For its platform, Crunchbase has collected information regarding individuals and companies to create profiles of both. The resulting directory of profiles is then made available to users of the platform. Information that may be provided in an individual's profile includes his or her name, photograph, contact information, job title, employment history, and education.

32.     Crunchbase's platform is based on its multifaceted approach to data collection. A vast majority of Crunchbase's data comes directly from its venture partners, of which it has over 4,000, and other contributors, including 600,000+ executives, entrepreneurs, and investors, as well as data brokers. Based on searches conducted with its platform, Crunchbase indicates that it has information on thousands of companies and investors and millions of individuals.

33.     Visitors to Crunchbase's website can use and search the platform for free; however, as discussed below, searches on the platform and information revealed on individuals are limited without a paid subscription.

34.     Crunchbase's platform allows the user to find and filter information about companies in diverse industries. Once a company is selected, information about it and its employees, including a list of ten executives and key decision makers, becomes available. For the list of employees, Crunchbase indicates that company contact information is available. However, prior to seeing the contact information or additional employees beyond the ten visible, the user is required to enter into a paid subscription or start a free trial.

35.     The platform also allows users to conduct searches for individuals based on selected criteria, such as sales managers within a specific area and/or industry. After conducting a search, Crunchbase will provide a list of five individuals matching the criteria selected.

Depending on the search parameters, the number of individuals falling within the search is much greater than the five visible. Similar to the company search, the platform will indicate that contact information for each individual is available. However, prior to revealing that information or showing additional results beyond the original five individual profiles, Crunchbase requires the user to enter into a paid subscription or start a free trial.

36.     As stated, for either company or individual profile searches, Crunchbase requires potential customers to enter into paid subscriptions or sign up for a seven-day free trial to reveal more search results and additional information contained in individual profiles (such as contact information). Crunchbase offers several paid subscription plans, with varying product access attached to each.

37.     Customers can select the "Starter" plan for $29 a month, billed annually. Customers can also select the "Pro" plan for $49 a month, billed annually. Finally, customers can contact Crunchbase for information regarding its "Enterprise" plan, which is geared towards "large teams."

38.     For both the "Starter" and "Pro" plans, there is a seven-day free trial. With the "Pro" version, customers may unlock contact information for ten individual profiles during the free trial period. When completed, the "free trial" automatically enrolls customers in the plan selected, subjecting them to a full year of payment, unless cancelled within the trial period.

39.     The free trial does not give the user access to all aspects of the platform. For instance, the export feature is not available during the free trial. This feature allows the user to export his or her search results to create a CVS file. In addition, after the free trial is over, the user will not be able to open contact information for individual profiles or access additional search results unless a paid for subscription is entered into.

40.     Individual profiles on Crunchbase's platform provide enough information to identify an individual. In fact, Crunchbase states that its data is enriched, cleansed, verified, and updated daily to ensure customers have the latest information.

41.     The purpose behind Crunchbase's use of individual profiles and allowing partial access to them for free is singular—to advertise and convince prospective customers to enroll in and ultimately purchase its monthly subscription services, whereby the user can access and retrieve full profiles on any individual searched on the platform and unlock additional platform uses otherwise unavailable. In other words, the partial access to individual profiles and limited name searches for free is part of Crunchbase's overall effort to sell its monthly subscriptions.

### Facts relating to Oriol Madrenas (Illinois)

42.     In April 2023, Madrenas discovered that his identity was used in Crunchbase's platform. Indeed, Madrenas can confirm that when his name is searched for on Crunchbase's website, a profile appears with the name of his employer, his prior job title,[3] and an option to "view" his email and telephone number.

43.     Madrenas further confirms that when a user selects the "view" tab related to contact information, the user is directed to either enter into a paid subscription or select a seven-day free trial of Crunchbase's "Pro" version. According to Crunchbase, the "free trial" will give the user access to ten verified contacts, including Plaintiff.

44.     Potential customers availing themselves of Crunchbase's platform are able to view and, on information and belief, have viewed not only information on Madrenas, but also Crunchbase's subsequent invitation to a free trial of Crunchbase "Pro." Thus, Madrenas' identity has been used by Crunchbase to market subscriptions to its platform.

45.     Crunchbase's purpose behind providing access to some of Madrenas' identifying

---

[3] Madrenas is still with the same company, but his role and title have recently changed.

information is, in part, to solicit the purchase of paid subscriptions.

46.     Madrenas has no relationship with Crunchbase; he neither utilizes the platform nor subscribes to it.

47.     Madrenas did not give consent, written or otherwise, to Crunchbase to use his name, likeness, personal information, or identity in any way. Nor did Madrenas provide Crunchbase with written consent to use his identity for commercial purposes. Had Crunchbase requested his consent, Madrenas would not have provided it.

48.     Crunchbase did not obtain written consent from Madrenas prior to compiling his personal information to create a profile on him for its platform. Crunchbase also did not obtain prior written permission to use a partial view of that profile, which includes his name and job title, to advertise paid subscriptions for its platform.  On information and belief, Crunchbase did not obtain written permission from any sources from which it compiled Madrenas' personal identifying information.

49.     Madrenas has intellectual property and privacy interests in his name, likeness, and identity recognized by Illinois statutory and common law. Madrenas has the right to exclude anyone from using his identity for commercial purposes without his written permission.

50.     Crunchbase's use of Madrenas' identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Madrenas is a willing participant in Crunchbase's marketing network, which he is not, and wants to be targeted by sales professionals, which he does not.

51.     The use of Madrenas' identity to advertise subscriptions to Crunchbase's platform demonstrates that his identity has value.

52.     The value of Madrenas' identity is further demonstrated by its inclusion in the

platform. Crunchbase's entire business model is dependent on Madrenas' identity, and others like it. Crunchbase derives its value through the accumulation of individual identities, the access to which subscribers pay for on a monthly basis.

53.     Crunchbase has injured Madrenas by using his identity for its own commercial purposes without compensation or permission in violation of IRPA.

## Facts relating to Douglas Jefferson (California)

54.     In April 2024, Jefferson discovered that his identity was used in Crunchbase's platform. Indeed, Jefferson can confirm that when his name is searched for on Crunchbase's website, a profile appears with the name of his employer, his prior job title, and an option to "view" his email and telephone number.

55.     Jefferson further confirms that when a user selects the "view" tab related to contact information, the user is directed to either enter into a paid subscription or select a seven-day free trial of Crunchbase's "Pro" version.  According to Crunchbase, the "free trial" will give the user access to ten verified contacts, including Jefferson.

56.     Potential customers availing themselves of Crunchbase's platform are able to view and, on information and belief, have viewed not only information on Jefferson, but also Crunchbase's subsequent invitation to a free trial of Crunchbase "Pro."  Thus, Jefferson's identity has been used by Crunchbase to market subscriptions to its platform.

57.     Crunchbase's purpose behind providing access to some of Jefferson's identifying information is, in part, to solicit the purchase of paid subscriptions.

58.     Jefferson has no relationship with Crunchbase; he neither utilizes the platform nor subscribes to it.

59.     Jefferson did not give consent, written or otherwise, to Crunchbase to use his name, likeness, personal information, or identity in any way. Nor did Jefferson provide Crunchbase with consent to use his identity for commercial purposes. Had Crunchbase requested his consent, Jefferson would not have provided it.

60.     Crunchbase did not obtain consent from Jefferson prior to compiling his personal information to create a profile on him for its platform. Crunchbase also did not obtain permission to use a partial view of that profile, which includes his name and job title, to advertise paid subscriptions for its platform.  On information and belief, Crunchbase did not obtain permission from any sources from which it compiled Jefferson's personal identifying information.

61.     Jefferson has intellectual property and privacy interests in his name, likeness, and identity recognized by California statutory law. Jefferson has the right to exclude anyone from using his identity for commercial purposes without his written permission.

62.     Crunchbase's use of Jefferson's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Jefferson is a willing participant in Crunchbase's marketing network, which he is not, and wants to be targeted by sales professionals, which he does not.

63.     The use of Jefferson's identity to advertise subscriptions to Crunchbase's platform demonstrates that his identity has value.

64.     The value of Jefferson's identity is further demonstrated by its inclusion in the platform. Crunchbase's entire business model is dependent on Jefferson's identity, and others like it. Crunchbase derives its value through the accumulation of individual identities, the access to which subscribers pay for on a monthly basis.

65.     Crunchbase has injured Jefferson by using his identity for its own commercial purposes without compensation or permission in violation of California Civil Code - CIV § 3344.

### Facts relating to Robert Burgy (Nevada)

66.     In April 2024, Burgy discovered that his identity was used in Crunchbase's platform. At the time of this discovery, Burgy was a citizen of and resided in Nevada.

67.     Burgy can confirm that when his name is searched for on Crunchbase's website, a profile appears with the name of his employer, his prior job title, and an option to "view" his email and telephone number.

68.     Burgy further confirms that when a user selects the "view" tab related to contact information, the user is directed to either enter into a paid subscription or select a seven-day free trial of Crunchbase's "Pro" version.  According to Crunchbase, the "free trial" will give the user access to ten verified contacts, including Burgy.

69.     Potential customers, including those residing in Nevada, availing themselves of Crunchbase's platform are able to view and, on information and belief, have viewed not only information on Burgy, but also Crunchbase's subsequent invitation to a free trial of Crunchbase "Pro."  Thus, Burgy's identity has been used by Crunchbase to market subscriptions to its platform in Nevada and elsewhere.

70.     Crunchbase's purpose behind providing access to some of Burgy's identifying information is, in part, to solicit the purchase of paid subscriptions.

71.     Burgy has no relationship with Crunchbase; he neither utilizes the platform nor subscribes to it.

72. Burgy did not give consent, written or otherwise, to Crunchbase to use his name, likeness, personal information, or identity in any way. Nor did Burgy provide Crunchbase with written consent to use his identity for commercial purposes. Had Crunchbase requested his consent, Burgy would not have provided it.

73. Crunchbase did not obtain written consent from Burgy prior to compiling his personal information to create a profile on him for its platform. Crunchbase also did not obtain prior written permission to use a partial view of that profile, which includes his name and job title, to advertise paid subscriptions for its platform. On information and belief, Crunchbase did not obtain written permission from any sources from which it compiled Burgy's personal identifying information.

74. Burgy has intellectual property and privacy interests in his name, likeness, and identity recognized by Nevada statutory and common law. Burgy has the right to exclude anyone from using his identity for commercial purposes without his written permission.

75. Crunchbase's use of Burgy's identity to advertise subscriptions to its platform, including to people residing in Nevada, is misleading in that it gives the false impression that Burgy is a willing participant in Crunchbase's marketing network, which he is not, and wants to be targeted by sales professionals, which he does not.

76. The use of Burgy's identity to advertise subscriptions to Crunchbase's platform demonstrates that his identity has value.

77. The value of Burgy's identity is further demonstrated by its inclusion in the platform. Crunchbase's entire business model is dependent on Burgy's identity, and others like it. Crunchbase derives its value through the accumulation of individual identities, the access to which subscribers pay for on a monthly basis.

78. Crunchbase has injured Burgy by using his identity for its own commercial purposes without compensation or permission in violation of Nev. Rev. Stat. 597.770 *et seq.*

### Facts relating to John Soots (Indiana)

79. In April 2024, Soots discovered that his identity was used in Crunchbase's platform. At the time of this discovery, Soots was a citizen of and resided in Indiana.

80. Soots can confirm that when his name is searched for on Crunchbase's website, a profile appears with the name of his employer, his prior job title, and an option to "view" his email and telephone number.

81. Soots further confirms that when a user selects the "view" tab related to contact information, the user is directed to either enter into a paid subscription or select a seven-day free trial of Crunchbase's "Pro" version. According to Crunchbase, the "free trial" will give the user access to ten verified contacts, including Soots.

82. Potential customers, including those residing in Indiana, availing themselves of Crunchbase's platform are able to view and, on information and belief, have viewed not only information on Soots, but also Crunchbase's subsequent invitation to a free trial of Crunchbase "Pro." Thus, Soots's identity has been used by Crunchbase to market subscriptions to its platform in Indiana and elsewhere.

83. Crunchbase's purpose behind providing access to some of Soots's identifying information is, in part, to solicit the purchase of paid subscriptions.

84. Soots has no relationship with Crunchbase; he neither utilizes the platform nor subscribes to it.

85. Soots did not give consent, written or otherwise, to Crunchbase to use his name, likeness, personal information, or identity in any way. Nor did Soots provide Crunchbase with

written consent to use his identity for commercial purposes. Had Crunchbase requested his consent, Soots would not have provided it.

86.     Crunchbase did not obtain written consent from Soots prior to compiling his personal information to create a profile on him for its platform. Crunchbase also did not obtain prior written permission to use a partial view of that profile, which includes his name and job title, to advertise paid subscriptions for its platform.  On information and belief, Crunchbase did not obtain written permission from any sources from which it compiled Soots's personal identifying information.

87.     Soots has intellectual property and privacy interests in his name, likeness, and identity recognized by California statutory law. Soots has the right to exclude anyone from using his identity for commercial purposes without his written permission.

88.     Crunchbase's use of Soots' identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Soots is a willing participant in Crunchbase's marketing network, which he is not, and wants to be targeted by sales professionals, which he does not.

89.     The use of Soots' identity to advertise subscriptions to Crunchbase's platform demonstrates that his identity has value.

90.     The value of Soots' identity is further demonstrated by its inclusion in the platform. Crunchbase's entire business model is dependent on Soots' identity, and others like it. Crunchbase derives its value through the accumulation of individual identities, the access to which subscribers pay for on a monthly basis.  Crunchbase's database and search platform exists for allowing Crunchbase's customers to prospect new business opportunities – i.e., leads for targeted marketing, recruitment, etc. (*See* allegations at ¶ 3).  The ability to prospect for business

16

opportunities using this information is a key selling point for Crunchbase's services, and Soots' inclusion in the database directly contributes to the value proposition for subscribers. This commercial use is also ongoing, because as long as his name and information appears in the database, it can be sold to subscribers.

91. Crunchbase has injured Soots by using his identity for its own commercial purposes without compensation or permission in violation of Indiana IN ST 32-36-1 *et seq.*

**Facts relating to Orville Wright (Alabama)**

92. In April 2024, Wright discovered that his identity was used in Crunchbase's platform. At the time of this discovery, Wright was a citizen of and resided in Alabama.

93. Wright can confirm that when his name is searched for on Crunchbase's website, a profile appears with the name of his employer, his prior job title, and an option to "view" his email and telephone number.

94. Wright further confirms that when a user selects the "view" tab related to contact information, the user is directed to either enter into a paid subscription or select a seven-day free trial of Crunchbase's "Pro" version. According to Crunchbase, the "free trial" will give the user access to ten verified contacts, including Wright.

95. Potential customers availing themselves of Crunchbase's platform are able to view and, on information and belief, have viewed not only information on Wright, but also Crunchbase's subsequent invitation to a free trial of Crunchbase "Pro." Thus, Wright's identity has been used by Crunchbase to market subscriptions to its platform.

96. Crunchbase's purpose behind providing access to some of Wright's identifying information is, in part, to solicit the purchase of paid subscriptions.

97. Wright has no relationship with Crunchbase; he neither utilizes the platform nor subscribes to it.

98. Wright did not give consent, written or otherwise, to Crunchbase to use his name, likeness, personal information, or identity in any way. Nor did Wright provide Crunchbase with written consent to use his identity for commercial purposes. Had Crunchbase requested his consent, Wright would not have provided it.

99. Crunchbase did not obtain consent from Wright prior to compiling his personal information to create a profile on him for its platform. Crunchbase also did not obtain prior written permission to use a partial view of that profile, which includes his name and job title, to advertise paid subscriptions for its platform. On information and belief, Crunchbase did not obtain permission from any sources from which it compiled Wright's personal identifying information.

100. Wright has intellectual property and privacy interests in his name, likeness, and identity recognized by ARPA. Wright has the right to exclude anyone from using his identity for commercial purposes without his written permission.

101. Crunchbase's use of Wright's identity to advertise subscriptions to its platform is misleading in that it gives the false impression that Wright is a willing participant in Crunchbase's marketing network, which he is not, and wants to be targeted by sales professionals, which he does not.

102. The use of Wright's identity to advertise subscriptions to Crunchbase's platform demonstrates that his identity has value.

103. The value of Wright's identity is further demonstrated by its inclusion in the platform. Crunchbase's entire business model is dependent on Madrenas' identity, and others

like it. Crunchbase derives its value through the accumulation of individual identities, the access to which subscribers pay for on a monthly basis.

104. Crunchbase has injured Wright by using his identity for its own commercial purposes without compensation or permission in violation of Ala. Code S6-5-770 *et seq.*

## CLASS ALLEGATIONS

105. Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this class action on behalf of themselves and classes of similarly situated persons.

106. Each of the Plaintiffs seeks to represent a class of individuals comprised of citizens and residents of the state from which they are citizens and residents. These respective classes are defined as follows:

### A. Madrenas—Illinois Class

All current and former Illinois residents who are not subscribers to Crunchbase's platform and whose identity is used to market paid subscriptions for Crunchbase's platform.

### B. Jefferson—California Class

All current and former California residents who are not subscribers to Crunchbase's platform and whose identity is used to market paid subscriptions for Crunchbase's platform.

### C. Burgy—Nevada Class

All current and former Nevada residents who are not subscribers to Crunchbase's platform and whose identity is used to market paid subscriptions for Crunchbase's platform.

### D. Soots—Indiana Class

All current and former Indiana residents who are not subscribers to Crunchbase's platform and whose identity is used to market paid subscriptions for Crunchbase's platform in Indiana.

### E. Wright—Alabama Class

All current and former Alabama residents who are not subscribers to Crunchbase's platform and whose identity is used to market paid subscriptions for Crunchbase's platform.

Excluded from the Classes are Crunchbase, its officers, managers, and employees, and members of the federal judiciary. Plaintiffs reserve the right to amend the Class definitions upon completion of class discovery when the contours and the parameters of the Classes become more apparent.

107. **Class Size (Fed. R. Civ. P. 23(a)(1)):** On information and belief, the members of the Classes are so numerous that joinder of all its members is impractical. Based on the investigation by his counsel and representations made by Crunchbase on its website, Plaintiffs reasonably believe that each Class comprises thousands of current and former Illinois, California, Nevada, Indiana, and Alabama citizens and residents whose profiles are compiled and maintained in Crunchbase's database and searchable on its platform. The exact number of persons in each of the Classes can be determined from records maintained by Crunchbase, but certainly exceeds 100.

108. **Commonality (Fed. R. Civ. P. 23(a)(2)):** There are many questions of law and fact that exist as to Plaintiffs and Members of the Classes, and those questions substantially predominate over any questions that may affect individual Class Members. Common questions of fact and law include, but are not limited to:

(a) whether Crunchbase uses Plaintiffs' and Class Members' names and identities in advertisements for its own commercial benefit;

(b)      whether Crunchbase obtained consent, written or otherwise, from Plaintiffs and the Classes prior to using their names and identities in advertisements promoting its platform as required by each of the respective statutes;

(c)      whether the conduct described herein constitutes a violation of right of publicity statutes for Illinois, California, Nevada, Indiana, and Alabama.

(d)      whether Crunchbase's violations of the various right of publicity statutes were willful, which would entitle Plaintiffs and the Classes to punitive damages; and

(e)      whether Plaintiffs and Class Members are entitled to declaratory, injunctive, and monetary relief as requested.

109.     **Typicality (Fed. R. Civ. P. 23(a)(3)):**  Plaintiffs' claims are typical of the claims of the Members of the Classes. Crunchbase's misuse of Plaintiffs' and Class Members' names and identities was the same for each.

110.     **Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4)):**  Plaintiffs will fairly and adequately protect the interests of the Members of the Classes. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide and Plaintiffs have no interest adverse to any Member of the respective Classes. Plaintiffs  intend to prosecute this case vigorously on behalf of themselves and the respective Classes they seek to represent.

111.     **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2)):**  As demonstrated above, Crunchbase has acted on grounds generally applicable to the proposed Classes such that final injunctive relief, as contemplated by the various state statutes is appropriate with respect to the Classes as a whole.

112.    **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):** Common questions of law and fact predominate over any questions affecting only individual Members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)    Proof of liability on Plaintiffs' claims will also prove liability for the claims of the Classes without the need for separate or individualized proceedings;

(b)    Evidence regarding defenses or any exceptions to liability that Crunchbase may assert and attempt to prove will come from Crunchbase's records and will not require individualized or separate inquiries or proceedings;

(c)    Crunchbase has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d)    The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Crunchbase economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. A class action, on the other hand, will permit a large number of claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e)    This case is inherently manageable as a class action in that:

(i)    Crunchbase's records will enable Plaintiffs to readily identify Class Members for each Class and establish liability and damages;

(ii)    Liability and damages can be established for Plaintiffs and the Classes with the same common proofs;

(iii)    A  class  action  will  result  in  an  orderly  and  expeditious administration of claims and it will foster economies of time, effort, and expense;

(iv)    A  class  action  will  contribute  to  uniformity  of  decisions concerning Crunchbase's practices; and

(v)    As a practical matter, the claims of the Classes are likely to go unaddressed absent class certification.

## COUNT I—VIOLATION OF IRPA, 765 ILCS § 1075/1 *et seq.*

113.    As stated, IRPA defines "right of publicity" as the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILCS § 1075/10.

114.    IRPA prohibits the use of an individual's identity for commercial purposes without first obtaining written consent and provides damages for any unauthorized use. 765 ILCS § 1075/30.

115.    By engaging in the foregoing acts and omissions, Crunchbase used Madrenas' and Illinois  Class  Members'  identities  for  commercial  purposes  without  first  obtaining  written consent.

116.    Each use of Madrenas' and Illinois Class Members' identity is a separate and distinct violation of IRPA giving rise to damages.

117.    Under IRPA, Crunchbase is liable for the greater of: (i) statutory damages in the amount of $1,000 per violation; or (ii) the sum of "actual damages" and "profits derived from the unauthorized use." 765 ILCS § 1075/40. IRPA also provides for punitive damages, if the violation is willful, and injunctive relief. 765 ILCS § 1075/40 & 50.

118.    As a result of Crunchbase's violations of IRPA, Madrenas and the Illinois Class

have suffered injury to their privacy rights as well as economic damages. Madrenas and the Illinois Class Members have been denied the commercial value of their identities, which Crunchbase used without permission from or compensation to Madrenas and the Illinois Class. Plaintiff and Illinois Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

119.    Madrenas, on behalf of himself and the Illinois Class, seeks statutory damages for each violation of IRPA, or alternatively, actual damages and profits derived from the unauthorized use of Madrenas' and Illinois Class Members' identities, whichever is greater; punitive damages if it is found that Crunchbase's actions were willful; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

### COUNT II—VIOLATION OF CALIFORNIA CIVIL CODE, §3344 *et seq.*

120.    As stated, California's Right of Publicity Statute, California Civil Code § 3344, prohibits the knowing use of "another's name, voice, signature, photograph, or likeness, in any manner … without such person's prior consent." Cal. Civ. Code § 3344.

121.    Section 3344 provides for damages for any such violation in the amount of $750 or the actual damages suffered on account of the unauthorized use.  Cal. Civ. Code § 3344. Section 3344 also provides for the possibility of an award for punitive damages. *Id.*

122.    By engaging in the foregoing acts and omissions, Crunchbase used Jefferson's and California Class Members' identities for commercial purposes without first obtaining prior consent.

123.    Each use of Jefferson's and California Class Members' identity is a separate and distinct violation of Section 3344 giving rise to damages.

124.    As a result of Crunchbase's violations, Jefferson and the California Class have

suffered injury to their privacy rights as well as economic damages. Jefferson and the California Class Members have been denied the commercial value of their identities, which Crunchbase used without permission from or compensation to Madrenas and the California Class. Jefferson and California Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

125. Jefferson, on behalf of himself and the California Class, seeks statutory damages for each violation of section 3344, or alternatively, actual damages suffered by Jefferson and California Class Members for the unauthorized use, whichever is greater; punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT III—VIOLATION OF NEVADA RIGHT OF PUBLICITY STATUTE

126. As stated, Nevada's Right of Publicity Statute, NV ST. § 597.810, prohibits "any commercial use of the name, voice, signature, photograph or likeness of another by a person, firm or corporation without first having obtained written consent for the use."

127. Section 597.810 provides for actual damages for any such violation, but not less than $750, injunctive relief, and "[e]xemplary or punitive damages, if the trier of fact finds that the defendant knowingly made use of the name, voice, signature, photograph or likeness of another person without the consent."

128. By engaging in the foregoing acts and omissions, Crunchbase used Burgy's and Nevada Class Members' identities for commercial purposes, in Nevada and elsewhere, without first obtaining prior consent.

129. Each use of Burgy's and Nevada Class Members' identity is a separate and distinct violation of Section 597.810 giving rise to damages.

130.    As a result of Crunchbase's violations, Burgy and the Nevada Class have suffered injury to their privacy rights as well as economic damages. Burgy and the Nevada Class Members have been denied the commercial value of their identities, which Crunchbase used without permission from or compensation to Burgy and the Nevada Class. Burgy and Nevada Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

131.    Burgy, on behalf of himself and the Nevada Class, seeks damages for each violation of Section 597.810, not less than $750; exemplary or punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT IV—VIOLATION OF INDIANA PUBLICITY STATUTE

132.    As stated, Indiana's Publicity Code, IC § 32-36-1-8, prohibits the commercial use of an individual's "personality," which includes the individual's name and other identifying characteristics, so long as they have value, without written consent.

133.    Section 32-36-1-10 of the Code provides for $1,000 or actual damages, whichever is greater, and treble or punitive damages if the violation is "knowing, willful, or intentional." The Indiana statute further provides for injunctive relief. IC § 32-36-1-12.

134.    By engaging in the foregoing acts and omissions, Crunchbase used Soots' and Indiana Class Members' personalities for commercial purposes, in Indiana and elsewhere, without first obtaining written consent. The use of Soots' and Indiana Class Members' personalities in this manner demonstrates that they have commercial value.

135.    Each use of Soots' and Indiana Class Members' personalities is a separate and distinct violation giving rise to damages.

136.    As a result of Crunchbase's violations, Soots and the Indiana Class have suffered

injury to their privacy rights as well as economic damages. Soots and the Indiana Class Members have been denied the commercial value of their personalities, which Crunchbase used without permission from or compensation to Soots and the Indiana Class. Soots and Indiana Class Members were denied their statutorily protected right to control how their personalities are used and suffered damages based on that misuse.

137.     Soots, on behalf of himself and the Indiana Class, seeks damages for each violation of IC § 32-36-1-8; treble or punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT V—VIOLATION OF ALABAMA RIGHT OF PUBLICITY STATUTE

138.     As stated, ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

139.     Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief.  AL ST § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

140.     By engaging in the foregoing acts and omissions, Crunchbase used Wright's and Alabama Class Members' identities for commercial purposes without first obtaining prior consent.

141.     Each use of Wright's and Alabama Class Members' identity is a separate and distinct violation of ARPA.

142.     As a result of Crunchbase's violations, Wright and the Alabama Class have

suffered injury to their privacy rights as well as economic damages. Wright and the Alabama Class Members have been denied the commercial value of their identities, which Crunchbase used without permission from or compensation to Wright and the Alabama Class. Wright and Alabama Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

143. Wright, on behalf of himself and the Alabama Class, seeks damages for each violation of ARPA in the amount of $5,000 per action, or compensatory damages including the Crunchbase's profits; any other damages available under Alabama law, including punitive damages; injunctive relief; prejudgment interest; and an award of attorneys' fees and costs

## CONCLUSION

144. As a result of Crunchbase's violations of these state statutes, Plaintiffs and the Classes have suffered injury to their privacy rights as well as economic damages. Plaintiffs and the Class Members have been denied the commercial value of their identities, which Crunchbase used without permission from or compensation to Plaintiffs and the Classes. Plaintiffs and Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

145. Plaintiffs, on behalf of themselves and the Classes, seek statutory damages for each violation of Illinois, California, Nevada, Alabama, and Indiana right to publicity statutes, or alternatively, actual damages and profits derived from the unauthorized use of Plaintiffs' and Class Members' identities, whichever is greater; punitive damages if it is found that Crunchbase's actions were willful; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

WHEREFORE, Oriol Madrenas, Douglas Jefferson, Robert Burgy, John Soots, and

Orville Wright, individually and on behalf of all other similarly-situated individuals, demand judgment in their favor and against Defendant Crunchbase, Inc. as follows:

A.    Certifying this case as a Class Action and appointing Plaintiffs and their attorneys as class representatives and class counsel, respectively;

B.    Declaring that Crunchbase's actions, as described herein, violate the right of publicity statutes in Illinois, California, Nevada, Indiana, and Alabama.

C.    Awarding statutory damages to Plaintiffs and the Classes for each violation of the respective statutes, or, alternatively, actual damages and profits derived from the unauthorized use of Plaintiffs' and Class Members' identities, whichever is greater, plus prejudgment interest;

D.    Enjoining Crunchbase from committing further violations of their right of publicity;

E.    Awarding Plaintiffs reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

F.    Awarding such other and further relief as this Court deems appropriate and just.

<div style="margin-left: 40%;">

Oriol Madrenas, Douglas Jefferson, Robert Burgy, John Soots, and Orville Wright, individually and as the representatives of classes of similarly-situated persons

By:    s/ Brian J. Wanca
       One of his attorneys
       Brian J. Wanca
       Wallace C. Solberg
       ANDERSON + WANCA
       3701 W. Algonquin Rd. Ste 500
       Rolling Meadows, IL 60008
       Telephone: (847) 368-1500
       bwanca@andersonwanca.com
       wsolberg@andersonwanca.com

</div>